**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**


**MARGARET THOMPSON,
on behalf of
DAVID THOMPSON,**

      **Plaintiff,**

**vs.**                                    **CASE NO. 1:06cv234-MP/WCS**

**MICHAEL J. ASTRUE,
Commissioner of Social Security,**

      **Defendant.**

_____/


## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. Loc. R. 72.2(D).  It is recommended that the decision of the Commissioner be reversed and the Commissioner ordered to grant Plaintiff's application for disability insurance benefits.

**Procedural status of the case**

Plaintiff, David Thompson, applied for disability insurance benefits.  Plaintiff passed away on March 9, 2006, before the administrative hearing could be held, and

the claim is pursued on his behalf by his wife, Margaret Thompson.  Plaintiff was born in

1952, had two years of college, and had past relevant work as a parking lot attendant.

Plaintiff alleges disability due to bipolar disorder and depression beginning on

September 1, 2003.

The Administrative Law Judge found at step 2 that Plaintiff had severe

impairments consisting of high cholesterol, hypertension, arthritis, gastroparesis, bipolar

disorder, and recent onset congestive heart failure.  R. 15.  The ALJ further determined

that Plaintiff had the residual functional capacity to perform his past relevant work as a

parking lot attendant from September 1, 2003, through February 22, 2006, but not

thereafter.  R. 20.  Since Plaintiff died on March 9, 2006, his disability after February 22,

2006, did not last for longer than five months as required by 20 C.F.R. §§ 404.315(a)(4)

and 404.316(b)(2) so that he could receive benefits.  Thus, the ALJ found that Plaintiff

was not disabled as defined by Social Security law.  Plaintiff contends that the ALJ

failed to give substantial weight to the opinion of Plaintiff's treating physician.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by

substantial evidence in the record and premised upon correct legal principles.  Chester

v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a

scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable

person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler,

703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d

1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if

supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir.

2002).  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial deference to the Commissioner's decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)-(f):

1.     Is the individual currently engaged in substantial gainful activity?

2.     Does the individual have any severe impairments?

3.     Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.     Does the individual have any impairments which prevent past relevant work?

5.     Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of

the application for benefits.  A positive finding at step three results in approval of the

application for benefits.  At step four, the claimant bears the burden of establishing a

severe impairment that precludes the performance of past relevant work.  If the claimant

carries this burden, the burden shifts to the Commissioner at step five to establish that

despite the claimant's impairments, the claimant is able to perform other work in the

national economy.  Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050,

1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove

that he or she cannot perform the work suggested by the Commissioner.  Hale v.

Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Medical evidence**[1]

Plaintiff was treated repeatedly for depression and bipolar disorder by a

psychiatrist, Dr. Diaz, from January 1, 1998, through June 21, 2004.  R. 113-151.  Dr.

Diaz also treated by Dr. Diaz from July 14, 2004, through February 8, 2006, just a

month before he died.  R. 224-231.

Dr. Diaz's medical notes are difficult to read,[2] but the following can be perceived.

On October 27, 2003, Dr. Diaz found that Plaintiff had feelings of helplessness and

depression.  R. 116.  On March 15, 2004, Dr. Diaz reported that Plaintiff had applied for

---

[1] Definitions of medical terms in this report and recommendation come from
DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, available at:
http://www.mercksource.com (Medical Dictionary link).

[2] Plaintiff and the ALJ refer to Dr. Diaz as male.  Doc. 20, p. 9; R. 17.  Defendant
refers to Dr. Diaz as female.  Doc. 23, p. 5.  I cannot find Dr. Diaz's full name in these
records, but I will refer to Dr. Diaz as "he."

social security benefits, and was feeling "a lot of shame and humiliation."  R. 114.  He was sleeping a lot and was depressed.  *Id.*  Dr. Diaz said that he supported Plaintiff's decision to apply for benefits due to his lack of success in maintaining or finding a job. *Id.*

On June 21, 2004, Plaintiff's treating physician completed a "Medical Source Statement, Ability to Do Work-Related Activities (Mental)."  R. 264-265.  Dr. Diaz said that Plaintiff had "no useful ability to function" with respect to his ability to maintain attention and concentration for extended periods, to work with or near others without being distracted by them, to make simple work-related decisions, or to complete a normal workday or workweek.  R. 264.  Dr. Diaz wrote that Plaintiff had been unable to have a full time job for several years, and that he had poor ("no useful ability to function") levels of concentration.  *Id.*  Dr. Diaz also said that Plaintiff had poor ("no useful ability to function") ability to interact with the public, get along with co-workers and peers, and to set realistic goals or make plans independently of others.  R. 265.  Dr. Diaz said that "any social situation is a cause of stress & agitation."  *Id.*  He said that Plaintiff had a tendency to be suspicious at work and personalize situations.  *Id.*  He said that Plaintiff was socially inadequate.  *Id.*  Dr. Diaz said that the medical finding supporting this assessment was bipolar affective disorder.  *Id.*

On October 5, 2004, Plaintiff was seen by Dr. Diaz, stating that he had anxiety about his inability to keep any job within the last few years.  R. 229.  Dr. Diaz found Plaintiff to be anxious, disheveled and unkempt, restless, and thinking about depressive themes.  *Id.*  His concentration was impaired.  *Id.*  The diagnosis was bipolar disorder. *Id.*  On January 11, 2005, Dr. Diaz noted that Plaintiff was restless, unkempt, and his

affect was blunt.  R. 226.  On February 10, 2005, he noted that Plaintiff was depressed, and said he was "stuck in solitary confinement in hell."  R. 228.  He had feelings of helplessness.  *Id.*  On February 13, 2005, Plaintiff's wife reported that Plaintiff did not help out at home.  R. 227.  Plaintiff complained of falls and dizziness.  *Id.*  On October 12, 2005, Dr. Diaz's findings were all within normal limits, without a note indicating depression, but a diagnosis of bipolar disorder continued.  R. 225.  Dr. Diaz referred Plaintiff to a neurologist.  *Id.*

On January 5, 2006, Plaintiff was tested and examined by Bernie Marrero, a licensed rehabilitation psychologist.  R. 187-191.  Plaintiff had been referred to Dr. Marrero by a neurologist, Dr. Jeff Borkoski, because it was thought that he had a history of memory problems that had grown worse.  R. 189,  Plaintiff scored very low (1st to 13th percentile) with respect to all memory categories.  R. 187.  His selective attention scores were also low (8th through 50th percentile).  *Id.*  Dr. Marrero concluded, however, that the memory test results were of poor validity due to suboptimal effort by Plaintiff.  R. 190.  Dr. Marrero concluded that Plaintiff:

> . . . feels a sense of ineptitude, hopelessness, and pessimism that appears to be consistent with his history of a Bipolar Disorder.  Although this affective disorder may appear concurrently with cognitive deficits, Mr. Thompson's suboptimal effort and resulting moderate to severe impairment in most areas assessed is more consistent with a psychogenic[3] etiology.

---

[3] Psychogenic means produced or caused by psychological factors.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

R. 191.  On February 8, 2006, Dr. Diaz noted that Plaintiff's affect was blunt, he dwelled

on depressive themes, he had feelings of helplessness, hopelessness, and his

concentration was impaired.  R. 224.

**Legal Analysis**

The opinion of a claimant's treating physician must be accorded considerable

weight by the Commissioner unless good cause is shown to the contrary.  Lewis v.

Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  The reasons for giving little weight to

the opinion of a treating physician must be supported by substantial evidence.  Marbury

v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992).  Good cause exists to afford less weight

to the opinion of a treating physician "when the:  (1) treating physician's opinion is not

bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating

physician's opinion was conclusory or inconsistent with the doctor's own medical

records."  Phillips v. Barnhart, 357 F.3d 1232, 1240-1241(11th Cir. 2004).  The ALJ

must clearly articulate the reasons for rejecting the treating physician's opinion.  *Id.*, at

1241.

The Administrative Law Judge discounted the opinion of Dr. Diaz, finding that

> Dr. Diaz never expressed any such concerns [as set forth in his opinion] in
> his pages and pages of treatment notes of the claimant.  On October 12,
> 2005, Dr. Diaz noted that claimant's thought content, cognitive functioning,
> appearance, behavior, and speech were all normal (Exhibit 12F/2).  In
> October, 2004, Dr. Diaz noted that claimant's thought content (which
> includes concentration, attention and memory) was normal (Exhibit 12F/6).
> Dr. Diaz'[s] opinion rendered in June 2004 is not given any weight due to
> lack of support in the objective medical evidence of record and due to the
> inconsisten[c]y of his opinion with his own findings.

R. 17-18.

The global finding that Dr. Diaz did not "express any such concerns" in his chronological medical treatment notes, referring to the fact that Dr. Diaz completed only one comprehensive assessment of the effects of Plaintiff's mental disorder upon his ability to work, is not substantial evidence in the record to give Dr. Diaz's opinion no weight.  For impairments that have become progressively more severe while a claimant is still working (such as a degenerative spinal condition and pain), a treating physician will sometimes express an opinion about a patient's ability to return to work so that the employer can know the extent of the impairment and its effects upon the ability to work. That sort of assessment is unlikely where, as here, the condition is chronic bipolar disorder that has a treatment record beginning in 1998 and the patient has not been working for sometime.  That Dr. Diaz did not repeatedly provide an assessment of Plaintiff's residual functional capacity in the sequential treatment notes is not substantial evidence in the record to discount his residual functional capacity opinion when he expressed it on June 21, 2004.  The treatment provided here to Plaintiff over a period of years was prescription medication, monitored by Dr. Diaz, and the treatment notes, to the extent that the notes are legible, essentially continue the psychotropic medication regimen.  The several significant comments made by Dr. Diaz concerning Plaintiff's residual functional capacity from a mental perspective are set forth above, and those findings support Dr. Diaz's comprehensive opinion of June 21, 2004.

The two specific instances cited by the Administrative Law Judge as the basis for giving the opinion of Dr. Diaz no weight are not substantial evidence in the record to support that conclusion.  While it is true, as the ALJ noted, that Dr. Diaz found Plaintiff's thought content to be within normal limits on October 5, 2004, (R. 229, Exhibit 12F, p.

6), he also determined that Plaintiff thought content on that particular day included depressive themes and Plaintiff's concentration was impaired.  Dr. Diaz also noted that Plaintiff was anxious, disheveled, unkempt, and restless.  R. 229.  The finding set forth above from the October 5, 2004, note is not substantial evidence in the record to fail to give *any* weight to the opinion of Dr. Diaz.

This leaves the note of October 12, 2005, as the sole basis, specifically mentioned by the ALJ, to give the opinion of Dr. Diaz no weight at all.  While the notes on this day report that Plaintiff was not depressed (the box is not checked) and his mood and thought processes were within normal limits, a diagnosis of bipolar disorder was also entered.  Further, this was the only day that such normality was indicated.  "A 'substantial evidence' standard . . . does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' "  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).  Thus, the medical notes by Dr. Diaz on October 12, 2005, standing alone, are not substantial evidence in the record to give the comprehensive opinion of Dr. Diaz of June 21, 2004, no weight at all.

The Commissioner cites the non-examining opinions of psychologists Drs. Zelenka and Bee as a basis to give no weight to the opinion of Dr. Diaz.  Doc. 23, p. 6. This is insufficient.  The opinion of a non-examining physician is "entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision."  Swindle v. Sullivan, 914 F.2d 222, 226 n.3 (11th Cir.1990), *citing*, Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir.1985).

Finally, the Commissioner cites a "report of contact" dated May 3, 2005, as evidence to show that Plaintiff was not as disabled as reported by Dr. Diaz.  R. 78-79. This memorandum was prepared by Rachel Stalvey and records what Plaintiff told Ms. Stalvey.  Plaintiff said he suffered from a significantly disrupted sleep pattern.  R. 78. He read for entertainment, but took several days to read a book and had difficulty remembering details.  *Id.*  He enjoyed beach activities, but became extremely agitated with others around him.  R. 78-79.  He reported difficulty shopping for groceries by himself.  R. 79.  He reported difficulty following instructions, giving an episode of trying to assemble a grill as an example.  *Id.*  He said his memory was poor.  *Id.*  Ms. Stalvey, like Dr. Diaz, found Plaintiff to be cooperative, pleasant, and nice.  *Id.*  "He spoke often about being alone and away from everyone."  *Id.*  In summary, this memorandum does not contain substantial evidence to discard the opinion of Dr. Diaz, even if it had been mentioned by the ALJ as evidence for that conclusion.

"Where the Secretary has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).  Since the reasons given

for giving no weight to the opinion of Dr. Diaz are not supported by substantial evidence

in the record, this court must accept the opinion as true.

Plaintiff argues that, accepting the opinion of Dr. Diaz as true, it was error for the

ALJ to have failed to find that Plaintiff's mental condition met or equaled Listing 12.04.

Listing 12.04 provides in part:

12.04 Affective Disorders: Characterized by a disturbance of mood,
accompanied by a full or partial manic or depressive syndrome.  Mood
refers to a prolonged emotion that colors the whole psychic life; it
generally involves either depression or elation.

The required level of severity for these disorders is met when the
requirements in both A and B are satisfied, or when the requirements in C
are satisfied.

A.  Medically documented persistence, either continuous or intermittent, of
one of the following:

    1.  Depressive syndrome characterized by at least four of the
following:

        a.  Anhedonia[4] or pervasive loss of interest in
almost all activities; or

        b.  Appetite disturbance with change in weight;
or

        c.  Sleep disturbance; or

        d.  Psychomotor agitation or retardation; or

        e.  Decreased energy; or

        f.  Feelings of guilt or worthlessness; or

        g.  Difficulty concentrating or thinking; or

---

[4] Anhedonia is a total loss of feeling of pleasure in acts that normally give pleasure.
DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

h.  Thoughts of suicide; or

i.  Hallucinations, delusions, or paranoid
thinking; or

\*                    \*                    \*

AND

B.  Resulting in at least two of the following:

1.  Marked restriction of activities of daily living; or

2.  Marked difficulties in maintaining social functioning; or

3.  Marked difficulties in maintaining concentration,
persistence, or pace; or

4.  Repeated episodes of decompensation, each of extended
duration;

\*                    \*                    \*

20 C.F.R. § 404, Appendix 1 to Subpart P – Listing Impairments.

Dr. Diaz's opinion of June 21, 2004, and his treatment notes, mentioned two of

the criteria set forth in Listing 12.04 A.1, that is, feelings of guilt or worthlessness and

difficulty concentrating or thinking, and those criteria are also contained in the medical

notes.  Evidence for the last two criteria is less certain.  On March 15, 2004, Dr. Diaz

reported that Plaintiff was sleeping a lot.  R. 114.  This arguably supplies a third

criterion, sleep disturbance, and Plaintiff reported sleep disturbance to Ms. Stalvey.  On

October 5, 2004, Dr. Diaz found Plaintiff to be anxious, disheveled and unkempt, and

restless.  R. 229.  This arguably supplies a fourth criterion, psychomotor agitation.  At

least two of the "B" criteria are clearly contained in the June 21, 2004, assessment by

Dr. Diaz, marked difficulties in maintaining social functioning and marked difficulties in

maintaining concentration, persistence, or pace.  In summary, the court might find that the A and B criteria of Listing 12.04 have been met.

The court need not rest its decision upon Listing 12.04, however.  The Administrative Law Judge asked the vocational expert to consider a hypothetical person having the impairments and restrictions evidenced by the June 21, 2004, opinion of Dr. Diaz.  R. 295.  The ALJ asked the vocational expert to consider a hypothetical person, "which is largely drawn from Dr. Diaz's medical source statement," having:

> no useful ability to function in the following areas; maintain attention and concentration for extended periods, working with or near others without being distracted by them, making simple work-related decisions, completing a normal workday or workweek, interacting appropriately with the public, getting along with co-workers and peers, setting realistic goals or making plans independently of others.

R. 295.  The vocational expert responded: "No sir, he couldn't, he could not perform past work [as a parking lot attendant] and an individual couldn't perform any work in the national or regional economy with those restrictions."  *Id.*

This was a very useful hypothetical for the ALJ to have placed in the record. Since the reasons given by the Administrative Law Judge to give no weight to the opinion of Dr. Diaz are not supported by substantial evidence in the record, the findings of Dr. Diaz must be accepted as true according to the law of this circuit.  Based upon those findings and the testimony of the vocational expert, at step 5 the ALJ should have found Plaintiff to be disabled solely based upon his mental condition.

**Conclusion**

Considering the record as a whole, the findings of the Administrative Law Judge failed to follow the law concerning the evaluation of the opinion of a treating physician,

and his conclusions are not based upon substantial evidence in the record.  For the

reasons discussed above, the decision of the Commissioner should be reversed and

the Commissioner ordered to grant Plaintiff's application for disability insurance benefits.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to

deny Plaintiff's application for Social Security benefits be **REVERSED** and the

Commissioner **BE ORDERED** to grant Plaintiff's application for disability insurance

benefits.

**IN CHAMBERS** at Tallahassee, Florida, on October 12, 2007.


**s/     William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**